UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

LANCO INNS, INC.,

        Plaintiff,

  v.                                            01-CV-00510

INTERNAL REVENUE SERVICE,

        Defendant,

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| THALER & THALER<br>Attorneys for Plaintiff<br>309 North Tioga Street<br>P.O. Box 266<br>Ithaca, New York 14851-0266 | RICHARD B. THALER, ESQ. |
| UNITED STATES DEPARTMENT<br>OF JUSTICE<br>Attorney for Defendant<br>Tax Division<br>P.O. Box 55<br>Ben Franklin Station<br>Washington, D.C. 20004 | KAREN E. WOZNIAK, ESQ. |

HOWARD G. MUNSON, SR. J.

**MEMORANDUM DECISION AND ORDER**

     This refund suit was filed by the plaintiff taxpayer, Lanco Inns, Inc. ("Lanco"), on April 9, 2001, pursuant to 26 U.S.C. § 7422, seeking a refund of penalties paid for failure to timely make deposits and payments with respect to: (1) Form 941, Employer's Quarterly tax liabilities, including amounts withheld from employees and (2) Form 940 Federal

Unemployment Tax Act tax liabilities. Lanco contends that its failure to timely meet its tax obligations was due to reasonable cause, for it was the result of an employee's misconduct. Defendant, the Internal Revenue Service ("IRS"), has filed a motion for summary judgment asserting that Lanco did not exercise ordinary business care and/or it was not disabled from meeting its tax obligations. Lanco cross-moves for summary judgment asserting that its failure to make the deposits was due to reasonable cause.

## BACKGROUND

Lanco operated its hotel in Ithaca, New York. From September 17, 1994, to September 7, 1996, Jean Hubble ("Hubble") was the general manager of the Sheraton Inn Ithaca Conference Center, ("Sheraton Inn")–the hotel operated by Lanco. Hubble, however, was an employee of Lanco and was neither the manager nor the Chief Financial Officer of Lanco. In 1996 there were three officers who were also the sole shareholders of Lanco: Richard Thaler was the president and owned forty-seven-and-a-half percent of Lanco's stock; Manley Thaler was a vice-president and owned forty-seven-and-a-half percent of Lanco's stock, and Richard Bargar was a vice-president and owned five percent of the stock in Lanco. Lanco's returns for Form 941, Employer's Quarterly tax liabilities (including amounts withheld from employees) and for Form 940, Federal Unemployment tax liabilities, were prepared by the accounting firm of LaVigne, Noles, and Beals ("LNB"). The tax deposit checks required the signatures of both Lanco's president and the Sheraton Inn's general manager. The general manger was responsible for filing the tax returns and depositing the checks. Prior to June of 1996, the tax returns prepared by LNB

were not presented to or signed by Richard Thaler. In or around the Spring pf 1996, Richard Thaler received notice that certain deposits for payroll and other related taxes had not been paid in full. Lanco conducted an investigation into the matter, which revealed that Ms. Hubble was not filing the relevant checks with the IRS and instead had embezzled the funds from Lanco. At this time, Marsha Van Pelt, the Sheraton Inn's controller was fired. In the Spring or Summer of 1996, Richard Thaler began to search for a new general manager for the Sheraton Inn because of Hubble's conduct. Richard Thaler signed the Form 941 Employer's Quarterly Federal Tax Return for the tax period ending June 30, 1996. In the Summer of 1996, Richard Thaler hired two new people to fill the hotel controller vacancy; these two individuals were responsible to him, and he subsequently paid the unpaid taxes as well as the assessed penalties and interest. The IRS denies that any link between the funds allegedly embezzled by Jean Hubble and the funds that were intended for tax deposits or payments has been established.

The IRS contends that Lanco failed to make timely and sufficient deposits for Form 941 for the tax periods ending March 31, 1994, June 30, 1994, and September 30, 1994. The IRS assessed penalties against Lanco for these periods pursuant to 26 U.S.C. §6656. The IRS assessed a penalty against Lanco for failure to pay tax pursuant to 26 U.S.C. §6651(a)(2) for the period ending March 31, 1994 (Form 941). The IRS assessed a penalty against Lanco for failure to timely file a return pursuant to 26 U.S.C. § 6651(a)(1) for the tax period ending March 31, 1994 (Form 941). The IRS assessed penalties against Lanco for its failure to make timely and sufficient deposits pursuant to 26 U.S.C. § 6656 for the tax periods ending December 31, 1994, March 31, 1995, and June 30, 1995 (Form 941). The IRS later abated the penalties in response to Lanco's request for refund and abatement on the grounds that its failures were due to

reasonable cause and not willful neglect. The IRS assessed a penalty against Lanco for failure to pay tax pursuant to 26 U.S.C. § 6651(a)(2) for the tax period ending June 30, 1995 (Form 941). The IRS later abated the penalty in response to Lanco's request for refund and abatement because its failure was due to reasonable cause and not willful neglect. The IRS submits that Lanco failed to make timely and sufficient deposits for Form 940 Federal Unemployment Tax Act liabilities for the tax period ending December 31, 1994. The IRS assesses penalties for this failure pursuant to 26 U.S.C. § 6651 (a)(2) and for failure to make timely and sufficient deposits pursuant to 26 U.S.C. §6656. The IRS later abated the penalties in response to Lanco's request for refund and abatement on the grounds that its failure was due to reasonable cause and not willful neglect. The IRS submits that Lanco failed to make timely and sufficient deposits for Form 941, Employer's Quarterly tax liabilities for the tax periods ending September 30, 1995, December 31, 1995, March 31, 1996, June 30, 1996, and September 30, 1996; with respect to Form 940, the IRS submits that Lanco failed to make timely and sufficient deposits for the tax period ending December 31, 1996. The IRS assessed penalties against Lanco for these failures pursuant to 26 U.S.C. § 6656. The IRS submits that Lanco failed to timely file a tax return for Form 941 for the tax period ending December 31, 1996, and the IRS assessed a penalty against Lanco pursuant to 26 U.S.C. §6651(a)(1).

## DISCUSSION

The legal principles employed by the court when ruling upon a motion for summary judgment are well-established. Summary judgment may be granted only when it is shown "that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 57 (2d Cir.1987). The moving party bears the initial burden "of showing the absence of a genuine issue as to any material fact." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed.2d 142 (1970). However, where the non-moving party will bear the burden of proof at trial, the moving party may discharge this initial burden "without supporting affidavits," Fed.R.Civ.P. 56(b), or any other evidence affirmatively negating the non-moving party's position if, after adequate time for discovery, an essential element of the non-moving party's case suffers from a complete absence of evidence. Celotex, 477 U.S. at 322-23, 106 S. Ct. 2548; Wiradihardja v. Bermuda Star Line, Inc., 802 F.Supp. 989, 992 & n. 4 (S.D.N.Y.1992). Once the moving party has come forward with support demonstrating that no genuine issue of material fact remains to be tried, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed.R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir.1996). In reviewing these materials, the court is "required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." Id. The substantive law governing the case will determine those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). Consequently, "the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48, 106 S. Ct. 2505 (emphases omitted). Nor will "[c]onclusory allegations ... suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' " Delaware & Hudson Railway Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir.1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. 2505), and "more than 'some metaphysical doubt as to the material facts.' " Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.1993) (quoting Matsushita Elec. Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986)). Put another way, "[t]he non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, ... or defeat the motion through mere speculation or conjecture." Western World Insurance Company v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990).

In this case, motions for summary judgment were filed by both parties. As was noted in Schwabenbauer v. Board of Education of Olean, 667 F.2d 305 (2d Cir.1981), when both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it. When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other. Id. at 313. "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. at 314.

To be excused for failure to timely pay taxes owed, a taxpayer must show that the failure (1) did not result from willful neglect, and (2) was due to reasonable cause. United States v.

Boyle, 469 U.S. 241, 244, 105 S. Ct. 687, 83 L. Ed.2d 622 (1985); Willful neglect is a "conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245. Reasonable cause exists if the taxpayer exercised "ordinary business care and prudence, but nevertheless was unable to file the return within the prescribed time." Id. at 246; Universal Concrete Products Corp. v. United States, 1990 WL 106584, at *3 (E.D. Pa. July 24, 1990) (a company's "failure to implement internal checks and controls over the employee responsible for tax obligations demonstrates a lack of ordinary business care" and is not reasonable cause to excuse tax liability).

The taxpayer bears the heavy burden of proving (1) both that the failure did not result from "willful neglect," and that the failure was "due to reasonable cause." Boyle, at 245. Even the government does not suggest in this case, however, that plaintiff's failure to abide by its statutory tax responsibilities was engendered by willful neglect. Instead, the dispute on appeal revolves solely around the question of whether the company's failures to file returns and taxes and make appropriate deposits were due to "reasonable cause."

Late filings may be excused when the delay is due to circumstances beyond the taxpayer's control, including postal delays and illness. Boyle, 469 U.S. at 249. The Supreme Court, however, has established a bright-line rule that reliance on an agent is not a reasonable cause and does not excuse a taxpayer's failure to timely file a tax return. Id. at 252. In Boyle, the taxpayer relied on an attorney to prepare and file a tax return on behalf of the estate for which the taxpayer was the executor. Id. at 242. Holding that reliance on an attorney does not excuse a late filing, the Supreme Court emphasized that Congress has placed the burden on the taxpayer to ensure the timely filing of tax returns. Id. at 249. Reliance is not a substitute for compliance with

the tax statutes. Id. at 251. The situation may differ if a taxpayer relies on the erroneous advice of counsel with respect to a question of law, but no special training or effort is needed to determine a tax deadline, and make sure that the deadline is met. Id. at 252.

Reliance on an agent, bookkeeper or controller does not constitute reasonable cause even when the individual embezzles a company's tax payments. Huffman, Carter & Hunt, Inc., 317 F. Supp.2d at 821-22; Classic Printing Inc. v. United States, 2001 WL 283799, at *8-9 (M.D. Pa.2001). In Huffman the plaintiff contracted with an outside payroll service to fulfill its employment tax obligations. 317 F. Supp.2d at 817. In Classic Printing, the plaintiff assigned tax-paying responsibilities to its bookkeeper. 2001 WL 283799 at * 2. In both cases, the tax-paying agent embezzled money from the taxpayer. Despite the criminal nature of the agents' conduct, the plaintiffs' failure to pay their taxes was not excused. The plaintiffs were responsible for overseeing the acts of their agents, and bore the ultimate responsibility and control over their tax obligations. Huffman, 317 F. Supp.2d at 822.

If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability. 26 C.F.R. § 301.6651-1(c)(1).

Lanco asserts that it exercised ordinary care and prudence, but nevertheless was unable to file the returns within the prescribed time. For tax return filing, deposits, and payment of the taxes and deposits due, Lanco instituted a system in which an outside accounting firm prepared the corporate Form 941 tax return, (withheld social security and income taxes), and Form 940

tax return, (withheld employment taxes). In conjunction with these tax returns, the outside accounting firm also prepared a check related to the payment of employment taxes. The check required the signature of two parties, the Lanco's President and employee Hubble. After the President signed the check, it was delivered to Hubble for signature for filing with the Internal Revenue Service. Lanco used two separate bank accounts, a savings withdrawal account, and a checking account. Based on the tax returns, the appropriate tax payment amount was to be deposited into the savings withdrawal account. After receiving the check and tax return, Hobble was to draw a check on the savings withdrawal account and deposit the amount into the savings withdrawal account, and thereafter file the check for the tax payment.

    IRS correctly contends that plaintiff's omission of not filing the tax returns was not reasonable, because its checks and controls over the employee responsible for tax obligations demonstrates a lack of ordinary business care and prudence, and as such, negates a claim that late filings, deposits, and payments are due to reasonable cause, Thom v. U.S., 80-2 USTC, 85,684, 85,686 (D. Or.1980); Obstetrical & Gynecological Group v. U.S., 79-2 USTC, 87,837 87,839 (D.D.C.1979).

    That there is simply no evidence in this summary judgment record to suggest that the ultimate responsibility to file returns and pay the employment taxes was not entirely delegated to Hubble, and no controls were in existence regarding that process. The responsibility to file tax returns and pay the employment taxes, however, rested solely with the taxpayer. It may not now point to the actions of its employee to relieve it of that responsibility. As the Supreme Court stated in Boyle, at 248, the reliance on an agent to file and pay taxes is not reasonable cause for failure to do so.

Notwithstanding, Lanco states that it is not seeking a refund of the penalty and interest payment because it relied on its employee Hubble to make the required tax payments. Instead, plaintiff asserts that the Hubble's embezzlement of funds intended for tax deposits or payments, disabled Lanco and made it unable to timely comply with its statutory tax obligations because of the criminal acts of the employee in charge of running the operations of Lanco's hotel.

In order to qualify for such relief, Lanco must also satisfy those portions of the relevant regulations that require a taxpayer to show that it has been rendered unable to meet its responsibilities despite the exercise of such care and prudence. See 26 C.F.R. § 301.6651-1(c)(1). No such disability has been established in this case.

The record shows that Lanco failed to comply with payment and filing requirements prior to Hubble becoming general manager of Lanco's hotel, and during the first nine months of her tenure. (IRS Mem. of Law in support of summary judgment motion, at p. 7).

Lanco concedes that, upon discovery of the failures of Hubble's to file the tax returns, pay taxes, and make deposits, Lanco's President was immediately able to forward to the defendant the necessary payments, including penalties, thus showing that it was not disabled from complying with its tax obligations.

Furthermore, the record does not disclose that Lanco ever sought recovery, in any form, of any portion of the allegedly embezzled funds from Hubble. No criminal charges or civil actions were brought against her, and no settlement agreement was made between Lanco and Hubble. Nor did she ever admit to any wrong doing.

Lanco cites In the Matter of American Biomaterials Corporation, 954 F.2d 919 (3rd Cir. 1992), as a case that has a disability situation analogous to its own. In its decision, the Third

Circuit considered the predicament of a corporation whose Chief Executive Officer/Chairman of the Board and Chief Financial Officer/Treasurer conspired to embezzle money from the company, as a result failed to pay taxes on the corporation's actual income, and hid that failure from the company. American Biomaterials, 954 F.2d at 921-22. The court, after discussing the disability exception to Boyle 's general rule, held that under the circumstances the corporation was disabled and could not be held liable for its failures to carry out its tax responsibilities. Id.. at 927. The corporate officers involved were actually engaged in, and convicted of, criminal action against the corporation. Indeed, in summarizing its holding the Third Circuit referred to situations in which "the officers of a corporation commit criminal acts against the corporation." Id. at 927. Perhaps more importantly, the officers involved were in direct and total control of the corporation. Their conduct thus appeared to be "beyond the corporation's control because they were the control people in the corporate structure. Supervision over such control people was not possible." Conklin Brothers v. United States, 986 F.2d 315, (9th Cir.1993). Based on this reasoning, the court found that when corporate officers commit criminal acts against the corporation, which results in the corporation's failure to comply with the tax code, the corporation is not automatically responsible for the penalties resulting from the failures. American Biochemicals, 954 F.2d at 927.

     Lanco maintains that the decision in American Biochemicals applies to the events in the instant case because its employee Hubble's misconduct took place due to the fact that she had ultimate control over Lanco's taxpaying procedure, therefore, it is not responsible for the penalties that resulted from Hubble's actions. The court disagrees with Lanco's analysis.

     If a corporation has lax internal controls or fails to secure competent external auditors to

ensure the filing of timely tax returns and deposit and payment of taxes, it fails to show reasonable cause or absence of willful neglect and is itself liable for statutory penalties, notwithstanding its lack of vicarious liability for the criminal actions of its agents. Universal Concrete Products Corp. v. United States, 1990 WL 106584 (E.D. Pa. July 24, 1990), aff'd w/o opinion, 941 F.2d 1204 (3d Cir.1991).

In, Conklin, the Ninth Circuit Court of Appeals, distinguishing the American Biomaterials decision, granted summary judgment in favor of the United States and against the taxpayer company despite its employee's failure to timely make withholding tax payments. In that case, the company hired an accounts payable clerk, who was later promoted to office manager/controller. Initially, she was closely supervised, but subsequently, the company's president and outside accountant determined that such supervision was not necessary. Subsequently, the controller failed to timely make the payroll tax deposits and tax returns, and concealed the deficiencies by undertaking all payroll functions herself. Id. at 316. This conduct went on for two years until the controller unexpectedly resigned. The company's president became aware of the deficiencies when questioned by a revenue agent of the Internal Revenue Service. The circuit court rejected the plaintiff's arguments that its corporate controller's alleged misconduct in intentionally concealing her failure to make the withholding tax payments was reasonable cause, and granted the United States' motion for summary judgment. The appellate court stated that "[a]lthough [the employer] reasonably assumed that its employees would comply with the statutes, that is a matter between them and does not resolve the matter regarding [the employer's] tax obligation." Id. at 317. The court distinguished American Biomaterials by stating:

Here, unlike in Biomaterials, [the controller's] deficient and improper conduct was not largely beyond [the employer's] control. In Biomaterials, the criminal conduct committed by corporate officers and the Chairman of the Board of Directors was beyond the corporation's control because they were the control people in the corporate structure, and supervision over these control people was not possible. In the case at bar, [the employer] had control over [the controller]. She was a manager/controller whose actions were subject to being supervised by [the employer's] president and majority shareholder, and by [the employer's] outside accountants. A decision was made that close supervision and review of [the controller's] payroll tax duties was no longer necessary. Although that decision may have been reasonable, the decision was a corporate matter and it does not resolve the matter as to [the employer's] tax duties. Thus, we find that under the circumstances [the employer] was not disabled in complying timely with its tax obligations.

Conklin Brothers, 986 F.2d at 318-319

The negligence, neglect or malfeasance of an employee in failing to file a return on time is generally insufficient to establish reasonable cause. The rule seems to be that the company is entitled to reasonable cause only where it can show it was disabled. See, e.g., Valen Manufacturing Company v. U.S., 90 F.3d 1190, 1996 FED App. 0243P (6th Cir. 1996); San Diego Drywall, Inc. v. U.S., 1993 WL 477942 (S.D. Cal. 1993), judgment aff'd, 56 F.3d 73 (9th Cir. 1995); Berlin v. Commissioner of Internal Revenue, 59 F.2d 996 (C.C.A. 2d Cir. 1932); Atlas Therapy, Inc. v. U.S., 66 F. Supp. 2d 1203, 171 A.L.R. Fed. 745 (N.D. Ala. 1999)(no abatement of penalties even though employee in charge of payroll actively concealed his failure to file returns and pay taxes).

The court concludes that the record in this case does not support a finding that Lanco was disabled.

Accordingly, Defendant's summary judgment motion is **GRANTED**, and the complaint is **DISMISSED;** Plaintiff's cross motion for summary judgment is **DENIED**.

**IT IS SO ORDERED**.

Dated: June 30, 2006
 Syracuse, New York

_____
Howard G. Munson
Senior U.S. District Judge